Brinkerhoff, J.,
dissenting. I am not entirely satisfied with the principle, by a reference to which the majority of the court de•cide tliis case. The suit below being an action on the case under the old system of pleading and procedure, and the plaintiffs below having had no notice of the facts intended to be offered in evidence by the defendant in mitigation of damages, either in the pleadings • or by an allusion to those facts in the slanderous words complained -of, I entertain strong doubts whether the admissibility of the evidence offered in mitigation, can be sustained either by reason or . authority.
But, inasmuch as the code of'civil procedure now provides that a defendant, in an action for slander, may set up in his answer not • only matter of justification, but also “any mitigating circumstances to reduce the amount of damages,” and prove either; thereby effecting for the future such a revolution in the mode of conducting ■.suits for slander, as to render a discussion of the principle of but evanescent and therefore trifling interest, I do not-think it worth 521] while to enter upon it. But waiving, for this ^reason, all question as to the soundness of the principle on which the majority •of the court proceed, I still find myself unable to concur in the judgment they have ordered; because I can not think that the principle has any such application to the case actually before us as to render •either necessary Or proper the reversal of the judgment of the district court.
The difference of opinion between the majority and minority of the court, arises entirely from the different construction which we •respectively give to that clause of the bill of exceptions taken in ;the district court, on which they base their finding of error.
That clause of the bill of exceptions is as follows:
“Defendant then offered to prove, by Benjamin Taylor, and 'Ephraim Cook, and others, that plaintiffs had live together alone in • one house before they were married, which fact was well known to the defendant at the time they so lived together, which was eight or liine years ago; to which evidence the plaintiff objected, and the court sustained the objection (but subsequently, while the same witness was under cross-examination, the plaintiffs offered to go into •.the inquiry, which was declined by the defendant), and refused to *522, 523 allow the evidence to go to the jury. The court held that defendant ■could not prove particular acts of misconduct on the part of the plaintiff, unless they were such as related to the circumstances connected with the words spoken by the defendant, but must be confined, in his proof, to general reports of her character for chastity in the neighborhood, and to general reports of her having lived with. her husband under suspicious circumstances before marriage; and defendant could not prove, as a fact, that she had lived with her husband under suspicious circumstances before marriage, no ■circumstance connected with that having been referred to by the •defendant in the Swords spoken by him. To all of which [522 ■rulings and decisions of the court defendant excepted.”
Now, if that part of the above extract from the bill of exceptions included in the parenthesis were omitted, and granting the point ruled by a majority of the court as to the admissibility of the evidence offered, it follows that the district court erred; but the statement embraced in this parenthesis shows, clearly to my mind, that .■subsequent to the offer of the defendant below to prove the fact alleged in mitigation, and after the court had refused, on objection being made, to admit such proof, but while the first witness, by whom the defendant below offered the proof, was still on the stand, the plaintiffs below withdrew the objection before made by them and sustained by the court; and the defendant below, then, at a time when he could have suffered no possible injury by its temporary exclusion, declined to enter upon the inquiry he had before urged.
It is impossible for me to ignore my knowledge of the manner in which business is done on the circuit. Bills of exception are drawn up, not by the court but by'Counsel; the court is generally pressed for time in which to dispose of the business on its docket; bills of exception, are presented to the court for signature, and on examination are found to be inaccurate, defective, or mistaken: instead of compelling counsel to recast the whole paper-(a process often greatly needed), the court, in its lenity, permits a resort to interlineations and erasures, and thus important facts are often obscured or awkwardly stated. And in looking at the entire clause of the bill of exceptions above quoted, I have no doubt that when the bill of ex-■cojDtions was presented to the court for signature, that part of it included in pai’enthesis was absent; and I can well imagine the learned judge who presided on the trial saying to *the coun- [523 sel who presented it, “Why, my dear sir, in this bill of exceptions *524 an important incident in the history of the trial of this ease is wholly omitted, and which, in fairness to the plaintiffs, ought to be inserted. You will remember, that after your offer to prove that the plaintiffs lived alone together before marriage was made and overruled, but while the witness by whom the proof was offered to Bo made was still under examination, and therefore before you could be prejudiced by his departure or otherwise, the plaintiffs withdrew their objection to that inquiry, and you then declined to enter upon it.” The counsel rejolies, “Ah, yes! I will interline that.” And hence this-awkward parenthesis thrown into the body of the sentence: “ But subsequently, while the same witness was under cross-examination, the plaintiffs offered to go into the inquiry, which was declined by the defendant.” How “go into the inquiry?” I answer, by the regular and ordinary methods- of legal inquiry; the party who holds the affirmative taking the initiative. So to interpret this phrase is in entire consistency with the parlance of lawyers, and we are bound to no other presumption.
If I am coi’rect in what I have said, all that part of the clause of the bill of exceptions above quoted which follows the parenthesis, is but a statement of the principles’on which the testimony offered was at first excluded. It does not appear to be a part of the charge of the court to the jury; and it could not injure the defendant, for it only gave reasons for the exclusion of evidence which he declined to give when all objection was withdrawn.
But, it is said, if the defendant was entitled to the testimony offered at all, he was entitled to it as competent, and that to have it go to the jury under the qualifying stigma of incompetency was an error of which he has a right to - complain. Grant this, and 524] what then? The withdrawal *of the objection to it rendered it competent for the court to admit it; and if the defendant had not declined the inquiry, I can not doubt but that the learned judge would have admitted it as being rendered competent-by the waiver of all objection to it, and would so have instructed the jury. ’Wo can not presume the contrary, and had he done otherwise, there is, it seems to me, no imaginable reason why so much pains should have been taken to thrust into the bill of exceptions this awkward parenthesis.
1 hold, then, that all objection to the proof in mitigation of damages offered by the defendant, having been withdrawn by the plaintiffs while the witness, through whom the proof was offered, *525 was still on the stand; and it not appearing that the proof was finally excluded, except at the defendant’s own instance, there is no error which he himself has not ratified, and none of which‘he has a right to complain. I think, therefore, that the -judgment of the district court ought to be affirmed.
I have, in this case, differed from the majority of my brethren— as I always do when I have the misfortune to differ with them— with extreme reluctance; because I entertain an unaffected distrust of my own judgment, and a very high and sincere respect for theirs. In thus briefly stating the reasons for my dissent, I have been governed by what I thought was due to my own convictions as to the rights of parties before us, and hope to be pardoned for the time I have occupied.